## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DONNA R.,[1]

      Plaintiff,

      v.                                                                 Civ. No. 20-1116 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

### MEMORANDUM OPINION AND ORDER[2]

Plaintiff Donna R. argues that the Commissioner committed error when she denied Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. In particular, Plaintiff argues that the ALJ failed to discuss a variety of medical evidence in the record related to her complaints of disabling pain. Because the Court finds that the ALJ's discussion of the evidence was insufficient on multiple points, the Court agrees with Plaintiff. As a result, the Court GRANTS Plaintiff's Motion To Reverse And Remand For Rehearing, With Supporting Memorandum, Doc. 22, and remands this matter for further consideration consistent with this Opinion.[3]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 5, 6. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

[3] The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

The ALJ found that Plaintiff has a variety of severe and non-severe impairments but that she is not disabled. On appeal, Plaintiff brings numerous challenges to this finding, chief among which are the ALJ's failure to thoroughly discuss the medical and subjective symptom evidence relating to these conditions. Because the Court agrees with Plaintiff in some respects, it will reverse the case and remand for a rehearing.

### A.     Hip pain and osteopenia

The ALJ found that Plaintiff's degenerative joint disease of the right hip and osteopenia[5] were severe impairments. AR 18. However, the ALJ did not fully credit Plaintiff's assertions of limitations from these conditions and assigned an RFC for medium work. AR 20. Plaintiff argues that, in so doing, the ALJ "ignored the consistent, longitudinal evidence of [Plaintiff]'s pain, and failed to include the resulting limitations in her functional capacity." Doc. 22 at 6. The Court disagrees with Plaintiff that the ALJ made any misstatements or mischaracterized the record. However, the Court does agree with Plaintiff that the ALJ failed to consider relevant, probative evidence of Plaintiff's limitations.

The Tenth Circuit has held that "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In addition, the ALJ should not ignore relevant evidence or mischaracterize the evidence. *Id.* at 1010 ("Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical

---

[5] A condition involving bone weakness.

nurse specialist] that would support a finding of disability while highlighting evidence favorable

to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)

(reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a

treating physician). Because the burden is on the claimant to point to probative evidence the ALJ

ignored, *Mays v. Colvin*, 739 F.3d 569, 575-76 (10th Cir. 2014), the Court will only discuss the

evidence Plaintiff specifically cites in her brief.

  The Court first disagrees with Plaintiff that the ALJ made errors with respect to what he

*did* say. Plaintiff alleges that the ALJ failed to "provide a physician's name or citation to the

record to support" the ALJ's discussion of "two November 20, 2017 doctor visits." Doc. 22 at 6-

7 (citing AR 21). Plaintiff is mistaken. The ALJ's discussion is about one doctor visit on

November 20, 2017. Both of these sentences are about the one visit and should be read together:

> I specifically note that despite the claimant's alleged disabling right hip condition
> and osteopenia, review of systems was negative for musculoskeletal and
> neurological complaints on November 20, 2017. Further, upon same-day physical
> examination, Dr. Bishop noted that the claimant was in no acute distress and sat
> comfortably during the examination. Dr. Bishop further noted the claimant was
> musculoskeletally normal with full range of motion, no spinal tenderness, and the
> ability to walk without assistance (Exhibit 27F, page 77 [AR 460]).

AR 21. As is clear from this excerpt, the ALJ provided both the physician's name (and in any

event, Plaintiff cites no law requiring him to do so) and the record citation.

  Plaintiff asserts that, in any event, this record—and many other records the ALJ cited—

are not reliable evidence because they were visits about cancer treatment and "unrelated to her

hip pain." Doc. 22 at 7. Plaintiff does not cite any authority showing the ALJ's reliance on

physical examinations conducted during doctor office visits is error.[6] Plaintiff states that, "The

---

[6] The Court agrees with this analysis from the District of Kansas:

> The Court does not share Plaintiff's concern with regard to the ALJ's reliance on
> these examinations. Even though Plaintiff was not seeking treatment for her back

ALJ further mischaracterized a treatment note for physical therapy as demonstrating a normal ambulation, when the therapy was for right breast pain and pectoralis contracture, and at therapy, [Plaintiff] complained of right knee pain." *Id.* (citing AR 810-13). The ALJ did not mischaracterize anything. The ALJ stated: "The claimant exhibited normal, independent ambulation on July 5, 2018 (Exhibit 28F, page 7 [AR 811])." This is simply a true statement of the record. The physical therapist wrote: "Gait: normal gait pattern, independent." AR 811. That the ALJ did not *also* discuss Plaintiff's complaints of knee pain is relevant to whether he omitted relevant medical evidence, not whether he mischaracterized evidence. There was no mischaracterization. For similar reasons, the Court rejects Plaintiff's complaints about the ALJ's discussion of the visits where normal physical findings are recorded without also mentioning that Plaintiff complained of bone pain, joint pain, leg pain, leg cramps, and chronic back and joint pain. Doc. 22 at 7-8 (citing AR 399-400, 902-07).

Plaintiff further argues that the ALJ relied on a "lack of physical examination findings" to draw conclusions. Doc. 22 at 8. This is not correct. The ALJ did not rely on the *absence* of findings; the ALJ relied on findings showing normal physical functioning. And an ALJ does not err by relying on objective medical findings to reject subjective symptom evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

---

pain, both doctors included information from her visits that is relevant to her back pain. . . . Plaintiff does not contend that either doctor was unqualified to make these medical findings. Nor does she cite any authority that the ALJ could not rely on medical evidence simply because the primary purpose of the doctor's visit was unrelated to her back pain.

*Karla Marie L. v. Saul*, No. 18cv2699, 2020 WL 1638060, at *7 (D. Kan. Apr. 2, 2020).

Ultimately, however, the Court agrees with Plaintiff that there are significant problems with what the ALJ did *not* say. Plaintiff argues that the ALJ overlooked or disregarded the following evidence related to Plaintiff's complaints of hip pain:

- In 2012, Plaintiff complained of pain in hips and legs and numbness in her feet. AR 506-507.

- In May of 2017, Plaintiff complained that she had constant right hip pain that was aggravated by walking, she had pain with active and passive abduction, tenderness and bony tenderness and she had a decreased range of motion. AR 464.

- A 2017 right hip x-ray noted she had mild degenerative changes with some joint space narrowing and small marginal osteophytes. AR 585.

- Plaintiff continued to present to her doctors with hip pain multiple times in 2018 and 2019, reporting she uses a cane at times and attended physical therapy sessions. AR 886-888, 891-892, 995-999, 1004-06.

- In her 2018 Adult Function Report, she complains of hip pain and associated limitations of being able to walk before needing to stop and rest only until her hip hurts and she must use a cane to walk when her hip joint hurts. AR 240-241.

- Plaintiff testified she can only stand for 20 minutes due to hip pain, and that walking exacerbates the hip pain. AR 54, 69.

Doc. 22 at 8-9.

Plaintiff does not make any argument why the medical evidence substantially prior to her alleged onset date of November 20, 2017 is relevant. However, the Court agrees with Plaintiff on the remaining evidence: the ALJ did not discuss it or otherwise show that he considered it. With the exception of noting Plaintiff's statement that she has to use a cane at times, AR 22, the ALJ did not acknowledge that Plaintiff's complaints of hip pain are present throughout the longitudinal record for the entire time period under consideration and that she has repeatedly complained of these conditions to medical providers. Nor did the ALJ discuss the x-ray as objective evidence supporting those complaints. In fact, the ALJ did not even acknowledge what Plaintiff's complaints consist of. The ALJ simply used boilerplate to reference "the claimant's

statements about the intensity, persistence, and limiting effects of her symptoms" with respect to

hip pain, AR 21, and then rejected those complaints without acknowledging or considering what

those statements were. This was error. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) ("The

ALJ did address claimant's complaints of disabling pain; however, he did so in conclusory

fashion."); *Hardman v. Barnhart*, 362 F.3d 676, 679-81 (10th Cir. 2004) (same).

      B.    <u>Knee and leg pain</u>

      Plaintiff asserts that she has medically determinable impairments of knee and leg pain.

She observes that the ALJ did not evaluate these conditions as an impairment—either severe or

non-severe—at any point in the five-step process. This is true.

      At step two, the ALJ must "consider the medical severity of [the claimant's]

impairment(s). If [the claimant] do[es] not have a severe medically determinable physical or

mental impairment that meets the duration requirement . . . or a combination of impairments that

is severe and meets the duration requirement, we will find that [the claimant is] not disabled." 20

C.F.R. § 404.1520(a)(4). Step two is "based on medical factors alone." *Williams v. Bowen*, 844

F.2d 748, 750 (10th Cir. 1988). Subjective symptom evidence cannot establish a medically

determinable impairment, and the objective medical evidence must be from an acceptable

medical source. 20 C.F.R. § 404.1521.

      Plaintiff cites almost exclusively subjective symptom evidence related to her knee and leg

pain, or evidence from non-acceptable medical sources such as physical therapists. Doc. 22 at 9-

10.  However, Plaintiff does cite one piece of arguably objective medical evidence in the record

establishing the impairment. AR 940 (March 27, 2019 mention of an MRI in connection with

knee pain that "only revealed some" osteoarthritis). Although this is minimal and borderline, it is

enough given the very low standard for establishing a medically determinable impairment. *E.g.*,

*Spicer v. Barnhart*, 64 F. App'x 173, 176 (10th Cir. 2003) (impairment established by an x-ray

showing mild degenerative changes and observations by physicians); *Langley v. Barnhart*, 373

F.3d 1116, 1123 (10th Cir. 2004) (explaining that the "[t]he Supreme Court has adopted what is

referred to as a 'de minimis' standard with regard to the step two severity standard").

Because knee and leg pain constitute a medically determinable impairment, the ALJ was

required discuss it *and* to evaluate the subjective symptom evidence pertaining to it. 20 C.F.R. §

404.1545(e); *Langley*, 373 F.3d at 1123-24 ("[A]t step two, the ALJ must consider the combined

effect of all of the claimant's impairments without regard to whether any such impairment, if

considered separately, would be of sufficient severity." (internal alterations and quotation marks

omitted)); *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) ("[T]he regulations also instruct

that even if the ALJ determines that a claimant's medically determinable mental impairments are

'not severe,' he must further consider and discuss them as part of his residual functional capacity

(RFC) analysis at step four."); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[T]he

failure to consider all of the impairments is reversible error.").

But the ALJ did not do this at any step of the disability process. And the ALJ assigned an

RFC allowing for "frequent balancing, stooping, kneeling, crouching, and crawling," which

certainly seems inconsistent with Plaintiff's complaints of knee and leg pain. Whether remand

would be required on this issue alone is a close call because Plaintiff cites very little objective

medical evidence from acceptable medical sources. Because the Court remands on other issues,

however, the Court instructs the Commissioner to consider on remand Plaintiff's complaints of

knee and leg pain.

    C.    <u>Upper extremity pain</u>

Plaintiff asserts limitations based on upper extremity pain resulting from breast cancer

surgeries. Doc. 22 at 11. The ALJ found that this was a non-severe impairment, AR 18, and did

not discuss it at step four. But as explained above, the ALJ was required to discuss all

impairments, whether severe or non-severe, throughout the disability determination process. As Plaintiff points out, the closest the ALJ got was stating: "The claimant bilateral upper and lower extremities were noted to be normal upon physical examination on May 11, 2018 (Exhibit 27F, page 16 [AR 399])." But, as Plaintiff points out, this is not a true statement of the record. The "normal" physical examination results pertained to Plaintiff's hand movements and leg movements, not her upper arms. AR 400. Further, the review of systems during that visit found that Plaintiff was positive for "myalgias," *id.*, which the ALJ failed to acknowledge.

Plaintiff points to the following evidence in the record including subjective symptom evidence which, given that her upper extremity pain is a medically determinable impairment, the ALJ should have discussed:

- Plaintiff had a partial mastectomy and reconstruction using adjacent tissue transfer on November 30, 2017. AR 454-58. In total, she had three breast surgeries and underwent 6 weeks of radiation. AR 57. After radiation, she complained to her doctors of pain and swelling along the right pectoralis muscle and sharp pains at the scar site. AR 390. Her doctor noted underlying palpable scar tissue, residual thickening, possible cording, and pectoralis muscle pain and tightness, and referred her to physical therapy. AR 392.

- Plaintiff testified she has difficulty lifting her right arm and trouble using her left arm, opining she can only carry 5-10 pounds. AR 58. She attempted physical therapy which "helped a little bit" but the pain did not go away. AR 57.

- Plaintiff's adult function report stated that she does not cook and has difficulties using her hands, because she gets cramps which makes it difficult to hold things and causes her to drop things and burn herself. AR 237, 240.

- Plaintiff presented to physical therapy in July 2018 complaining of hand pain and weakness, pointer finger pain and that she was dropping items. AR 810.

- She reported hand cramping and arm and shoulder pain with decreased range of motion to her providers on multiple occasions. AR 399 (May 11, 2018); AR 424 (January 24, 2018); AR 892 (October 2, 2018).

- Her physical therapist noted moderate right end range right shoulder limitation in flexion and abduction; right pectoralis muscle is tight and tender; pectoralis minor muscle has tightness and tenderness; right serratus has tightness and tenderness; scar tissue mobility limitation with tenderness right axilla. AR 811 (July 5, 2018).

- In physical therapy, her breast scar was observed to be "quite thick and painful with poor mobility." AR 425 (January 24, 2018).

Doc. 22 at 12-13.

For the same reasons stated above with respect to hip pain, the Court finds this is relevant evidence the ALJ did not discuss or otherwise demonstrate that he considered. The RFC limited Plaintiff to "frequent reaching with her right upper extremity; and frequent handling, fingering, and feeling with the right hand . . . ." AR 20. The ALJ, however, does not explain this limitation in the narrative and the limitation seems to bear little, if any relationship to the evidence. The Court will remand for the ALJ to consider Plaintiff's limitations from upper extremity pain.

D.    Anxiety and depression, insomnia, and incontinence

Plaintiff challenges the ALJ's determination at step two that Plaintiff has non-severe impairments of anxiety and depression, insomnia, and incontinence. AR 18; Doc. 22 at 14-18. To begin with, the Court notes that the finding of non-severity at step is harmless error, if it is error at all. "[A] claimant need only establish, and an ALJ need only find, one severe impairment." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id.* Here, the ALJ found Plaintiff had other severe impairments; thus, there is no harmful step-two error.

This conclusion, however, does not end the analysis. That is because, at step four, "an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC." *Allman*, 813 F.3d at 1330. Therefore, the ALJ's narrative discussion at step four must demonstrate that he considered Plaintiff's anxiety and depression, insomnia, and incontinence. Aside from one conclusory sentence that states the ALJ "finds persuasive the opinions of the

state agency . . . psychological consultants" that Plaintiff has no severe medically determinable mental impairment, AR 23, there is no discussion in the step-four narrative whatsoever pertaining to the non-severe conditions Plaintiff discusses on appeal. The Court thus remands for a discussion of these conditions throughout the disability evaluation process.

     E.    <u>Remaining issues</u>

Because of the multiple errors with respect to the ALJ's evaluation of the evidence earlier in the process, the Court does not reach Plaintiff's challenges to the ALJ's evaluation of subjective symptom evidence, the finding that Plaintiff can return to her past relevant work, or the alternative finding at step five that Plaintiff can transition to other work.

<b><u>CONCLUSION</u></b>

For the reasons stated above, the Court GRANTS Plaintiff's Motion To Reverse And Remand For Rehearing, With Supporting Memorandum, Doc. 22.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**